**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-5865-WJM

MUSTAFA K. TIRYAKI,

Petitioner,

v.

NATHAN RASPER, in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Denver Field Office, Immigration and Customs Enforcement, *et al*.

Respondents.

---

**ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Mustafa K. Tiryaki's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1). Respondents Nathan Rasper, in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Denver Field Office for Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as Secretary of U.S. Department of Homeland Security; U.S. Department of Homeland Security; Todd Blanche, in his official capacity as U.S. Attorney General; Executive Office for Immigration Review; and Juan Baltazar, in his official capacity as Warden of the Aurora ICE Processing Center (collectively, "Respondents" or the "Government") filed a cursory response. (ECF No. 7). The Court did not order a reply.

For the following reasons, the Court grants the Petition.

## I. BACKGROUND

This case presents an all-too-familiar fact pattern. Tiryaki is a native and citizen

of Turkiye. (ECF No. 1 at ¶ 3.) He entered the United States without inspection on May 24, 2022 to seek asylum. (*Id.*) He was detained for six months until he was released on a $15,000 bond. (*Id.*) He was then issued a Notice to Appear on July 29, 2022, which designated him "an alien present in the United States who has not been admitted or paroled, and charging him as inadmissible, pursuant to section 8 U.S.C. § 212(a)(6)(A)(i)." (*Id.* at ¶¶ 3, 45.) Tiryaki timely filed an I-589 asylum application. (*Id.* at ¶ 3.)

Tiryaki was detained without a warrant on September 14, 2026, following a traffic stop in Wyoming, while towing vehicles for work. (*Id.* at ¶¶ 4, 46.) He was subsequently transferred to the GEO-ICE Aurora Detention Center. (*Id.* at ¶ 4.) He has no criminal history. (*Id.* at ¶ 9.)

His detention has inflicted profound harm on his physical and mental health. (*Id.* at ¶ 48.) Following his arrest and transfer to the Aurora Detention Center, the Immigration Court denied Petitioner's custody redetermination request, and Petitioner is now subject to mandatory detention. (*Id.*) On November 2, 2026, Petitioner was denied bond for flight risk, and believes that another bond request is futile. (*Id.* at ¶ 6.) He avers that "ICE claims the authority to detain [him]—now that bond was denied—for the indefinite length of time necessary to complete removal proceedings, even if that time becomes unreasonably prolonged." (*Id.* at ¶ 9.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004.) More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such

cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Tiryaki challenges the legality of his detention under several bases, arguing Respondents violated (1) his Fifth Amendment due process rights (Claim One); and (2) various provisions of the Immigration and Nationality Act ("INA") (Claims Two and Three). Claim Three, specifically, contends that Tiryaki's detention is governed by 8 U.S.C. § 1226(a). The Court need only reach the merits of the Claim Three to resolve this matter. *See United States v. Hardman*, 297 F.3d 1116, 1124 (10th Cir. 2002) ("[I]t is well-settled that federal courts should avoid deciding constitutional issues when statutory issues are dispositive.").

### A. INA Violation

Tiryaki claims that he is "not an 'arriving alien' since he entered without inspection and has been residing in the interior of the United States. Thus, [he] is entitled to a bond hearing or immediate release under INA § 1226(a)." (ECF No. 1 at ¶ 13.) Respondents responded without addressing this claim, instead declining to "submit[] a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No. 7 at 1–2.) In any case, the Tenth Circuit's decision in *Santillan*

*Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026) leaves little to debate. Tiryaki is correct.

In *Santillan Quiroz*, the Tenth Circuit considered "whether § 1225(b)(2)(A) or § 1226(a) applie[d]" to a § 2241 petitioner who entered the United States "[t]wo decades ago" and had "lived here ever since." *Id.* at 1235, 1233. Ultimately, it held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually[1] subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at 1237. The Tenth Circuit based its holding in significant part on its interpretation of the phrase "seeking admission," as it is used in § 1225(b)(2)(A). *Id.* at 1237–40. It reasoned: "A person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered." *Id.* at 1239. Thus, "[t]he only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Id.* By extension, "§ 1225(b)(2)(A) is likewise limited to the border." *Id.*

The material facts here are indistinguishable from those summarized in *Santillan Quiroz*. Like the § 2241 petitioner in that case, Tiryaki had already entered the United States—and was notably detained and released on bond—when he was then re-detained by ICE in Wyoming in September 2026. (ECF No. 1 at ¶¶ 3–4.) Accordingly, § 1226(a)—not § 1225(b)(2)(A)—applies to Tiryaki.

**B. Remedy**

The Government declined to substantively address Tiryaki's claims. (ECF No. 7

[1] The Tenth Circuit's holding is qualified only by the fact that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)." *Id.* at 1237 n.6. But, as in *Santillan Quiroz,* "[t]here is no argument here that § 1225(b)(1)(A) applies to [Tiryaki]." *Id.*

at 1–2.) It even concedes that "the appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, release Petitioner from detention." (*Id.* (emphasis in original).) Tiryaki requests immediate release and argues "a bond request is futile . . . ." (ECF No. 1 at ¶ 6.)

The Court agrees with Tiryaki that a bond hearing will not serve as adequate relief. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Tiryaki's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 4) is MADE ABSOLUTE and

Tiryaki's Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief to Tiryaki pursuant to the Third Claim of the Petition. The Court does not reach the merits of the First and Second Claims;

3. **By no later than tomorrow, November 14, 2026,** Respondents shall IMMEDIATELY RELEASE Tiryaki on his own recognizance, along with all his personal belongings, subject only to the conditions of his 2022 detention and release on bond**.** **No additional conditions of release shall be imposed on Tiryaki by Respondents**. Respondents shall further facilitate Tiryaki's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address,

4. Respondents are ENJOINED from re-arresting or re-detaining Tiryaki unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Tiryaki shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

5. During such periods of time as Tiryaki is in Respondents' custody, they shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Tiryaki from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Should Tiryaki believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **December**

**9, 2026**. Respondents shall file a response by no later than **December 30, 2026**, and Tiryaki shall file a reply by no later than **January 13, 2027**; and

7. Judgment shall enter in Tiryaki's favor and against Respondents on **November 25, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 13th day of November, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge